```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
UNITED STATES OF AMERICA,              :
                                       :
            -v-                        :     11-cr-0065-01(JSR)
                                       :
GEORGE SALEMO,                         :     MEMORANDUM ORDER
                                       :
            Defendant.                 :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Familiarity with the background to this case is here assumed. As relevant here, on July 7, 2011, a jury convicted defendant George Salemo of two counts of wire fraud in violation of 18 U.S.C. § 1343, and, on October 19, 2011, the Court sentenced him to 162 months' imprisonment. See ECF Nos. 6, 49. Salemo has since been incarcerated at the Federal Correctional Institution, Fairton ("FCI Fairton"), and his projected release date is May 22, 2022.

Subsequently, on March 9, 2019, Salemo filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582, which the Government opposed. See ECF Nos. 83, 87. In the Orders dated May 6, 2019 and June 11, 2019, the Court denied his motion for substantially the reasons stated in the Government's opposition letter, see ECF Nos. 88, 93, and the Court of Appeals for the Second Circuit subsequently affirmed, see ECF No. 97.

Now before the Court is another pro se motion of Salemo seeking compassionate release, this time in light of the

potential impact of the COVID-19 outbreak on some of the same health conditions mentioned in his prior motion. See Letter, dated April 12, 2020, ECF No. 98 ("Def. Mem."); see also Supplemental Letter, dated April 27, 2020, ECF No. 101; Reply Letter, dated May 9, 2020, ECF No. 102 ("Def. Reply"). The Government opposes. See Opposition Letter, dated May 1, 2020, ECF No. 100. For the reasons set forth below, the Court denies the motion.

## **Analysis**

Prior to the enactment of the FIRST STEP Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prison ("BOP") could file a motion for compassionate release to courts. The FIRST STEP Act amended this provision to permit an inmate to file a motion for compassionate release, but only after exhausting administrative review of the denial of a request to the BOP for compassionate release, or after 30 days have passed since the request was made to the warden, whichever is earlier. See 18 U.S.C. § 3582(c)(1)(A). Based on defendant's representation that he has "filed a request for Compassionate Release with his Case Manager at [FCI Fairton] . . . on March 5, 2020" and given that his instant letter motion is dated April

12, 2020, Def. Mem. 1, the Court deems this exhaustion requirement satisfied.[1]

Once the exhaustion requirement is satisfied, the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Application Note 1 to U.S.S.G. § 1B1.13 states that extraordinary and compelling reasons exist when, as potentially applicable here:

(A)   Medical Condition . . .

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[1] Moreover, the Court could, if it wished, waive the 30-day requirement in these circumstances. See United States v. Haney, No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020).

> (B)  Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Addressing the latter ground first, the Court finds that defendant does not qualify, barely, for the "Age of the Defendant" basis for finding extraordinary and compelling reasons. Although defendant is currently 74 years old, he has not yet served at least 121.5 months or 75 percent of his term of imprisonment. See U.S.S.G. § 1B1.13 Application Note 1(B). Nor has he yet served 10 years (120 months) in prison. See id. Instead, he has served about 113 months of his sentence, which falls short of the either threshold. Nevertheless, the Court notes that he is quite close to satisfying this requirement.[2]

This is less true, however, with respect to the "Medical Condition" basis for finding extraordinary and compelling reasons. Salemo asserts that he is a chronic care inmate "suffering from severe [chronic obstructive pulmonary disease ("COPD")], Lung Capacity 25 %, and sleep apnea." Def. Mem. 1; see also Def. Reply 2-4. However, the prison medical records appear to show that, although Salemo indeed suffers from certain

---

[2] If one were to take into account the good time reduction that Salemo has apparently earned, he would effectively have served more than 75% of his actual prison time.

of deleterious conditions, he appears to be exaggerating their severity. For instance, his claim that his lung capacity is at 25% is not supported by the records he cites. Cf. Def. Mem. 4 (the BOP medical report stating that "[t]he airway obstruction is confirmed by the decrease flow rate at the peak flow and flow at 25%, 50% and 75% of the flow volume curve"). Nevertheless, it does appear that he suffers from "serious physical or medical condition[s]." U.S.S.G. § 1B1.13 Application Note 1(A)(ii). But he has not met his burden of proving that these medical conditions have "substantially diminishe[d] [his] ability . . . to provide self-care within the environment of a correctional facility." Id. Most of the conditions, which existed before he entered the BOP custody, appear to have been well-managed at FCI Fairton. For example, the BOP officers there have been providing needed medical treatments, as well as an inhaler, and the BOP Health Services Clinical Encounter report dated February 17, 2020 mentions that, for instance, Salemo himself stated that the "current regiment" regarding his COPD was "very effective." Def. Mem. 4-5.

To be sure, the COVID-19 outbreak does materially change the situation. Salemo argues that his lung problem in particular "places the movant in the highest risk category with a survival rate if the Movant contracts [COVID-19] of 20%." Def. Mem. 1.

The Court is also mindful of the fact that conditions of confinement -- sharing small cells, eating together, using same bathrooms and sinks, delays in medical testing, evaluation, and treatment, and rationed access to soap -- make prisons more potentially conducive to the transmission of COVID-19 than elsewhere. At the same time, it is worth noting that the BOP has taken a number of steps to mitigate the spread of the virus in federal prisons, such as increased screening of inmates, restrictions on visitors, restrictions on gatherings, mandated social distancing, and, eventually, lockdowns lasting at least 14 days.

Indeed, there is every indication that the BOP's efforts have been working at FCI Fairton. As of May 17, 2020, FCI Fairton -- which houses 1,099 inmates, see FCI Fairton, http://www.bop.gov/ locations/institutions/fai/ (last visited May 17, 2020) -- had no confirmed positive case among inmates and had only one such case among staff. See Bureau of Prisons COVID-19 Cases, available at http://www.bop.gov/coronavirus/ (last visited on May 17, 2020).

For these reasons, the Court finds that no extraordinary and compelling reason exists for granting Salemo's motion for

compassionate release, and therefore denies the motion.[3] Nonetheless, given all the circumstances, the Court, sua sponte, recommends to the BOP that it consider Salemo for release to home confinement under the broader discretion available to the BOP.[4]

The Clerk of the Court is directed to close the entry bearing docket number 98.

SO ORDERED.

Dated:   New York, NY
         May 17, 2020

JED S. RAKOFF, U.S.D.J.

---

[3] Because this is a sufficient ground to deny the motion, the Court does not reach other issues raised, such as consideration of the § 3553(a) factors. In addition, there was an initial confusion between the parties over whether defendant was requesting home confinement as an alternative to the request for compassionate release, but defendant clarified in his reply letter that he was not making an alternative request as such. See Def. Reply 1.

[4] Because Salemo is proceeding pro se, the Government is hereby directed to relay this recommendation to the BOP.