```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,                 :
                                          :    11-cr-65 (JSR)
                                          :
 -v-                                      :    OPINION AND ORDER
                                          :
GEORGE PAUL SALEMO,                       :
                                          :
    Defendant.                            :
------------------------------------------x
```

JED S. RAKOFF, U.S.D.J.:

Before the Court is George Paul Salemo's motion for sentence reduction under 18 U.S.C. § 3582(c). ECF 121. In 2011, a jury convicted Salemo of two counts of wire fraud for transmitting a fraudulent check and a forged grant agreement between an organization he formed and the U.S. Department of Agriculture, which he used to obtain loans from financial institutions. ECF 1, 49. The Court sentenced Salemo to 162 months of imprisonment with 3 years of supervised release. ECF 49. He is currently 77 years old and was incarcerated at the Federal Correctional Institution Fairton ("FCI Fairton") for ten and a half years before being transferred to the Bronx Community Reentry Center, a halfway house, on May 24, 2021, where he currently resides. Salemo's scheduled release date is currently May 22, 2022.

On March 5, 2020, while at FCI Fairton, Salemo submitted an application for compassionate release through his case manager. Mot. 4. On March 9, 2019, Salemo filed a pro se motion for compassionate release, which was denied. ECF Nos. 88, 89. More than thirty days later, on April 24, 2020, Salemo filed a second pro se motion for

1

compassionate release, in which he argued that the pandemic posed significant risks to him given his health conditions. ECF Nos. 99, 101. On May 17, 2020, that motion was denied on the ground that the Court construed the Sentencing Commission's Policy Statement on the sentence reduction statute, 18 U.S.C. § 3582(c), to bind a district court's determination of what factors amount to an "extraordinary and compelling reason[]" for a sentence reduction under U.S.S.G. § 1B1.13 Application Note 1. See Memorandum Order, ECF 103. Salemo appealed the decision and the Second Circuit granted the Government's motion to remand the case for reconsideration in light of United States v. Brooker, 976 F. 3d 228 (2d Cir. 2020) (Calebresi, J.).[1] The Court then appointed counsel, ECF 118, who filed the pending motion (Motion).

The Government now argues that Salemo's motion is procedurally improper under Section 3582(c)'s exhaustion requirement because he has not submitted to the Bureau of Prisons (BOP) each of the arguments in the current iteration of his Motion for sentence reduction following remand from the Second Circuit. As explained below, the Court holds that this poses no procedural obstacle to reaching the merits of Salemo's Motion. Section 3582(c)(1)(A) does not expressly require a defendant to demonstrate administrative exhaustion on each issue he argues in a motion for sentence reduction, and there is no reason to judicially impose such a hurdle. One BOP denial is enough.

---

[1] Unless otherwise specified, all internal quotation marks, citations, emphases, and alterations are removed from all sources cited herein.

The Court has carefully considered Salemo's Motion, the Government's papers in opposition, and the parties' presentations at oral argument. The Court here presumes the Parties' familiarity with the facts of this case and recites only those details necessary to decide this Motion. Now, after due consideration and in light of the discretion Brooker provides, the Court grants Salemo's motion for sentence reduction for the reasons set forth below. Specifically, Salemo's custodial sentence is hereby reduced to time served. The 3 years of supervised release to which he was originally sentenced remains unchanged and shall begin immediately.

## I. Legal Framework

Salemo brings his motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). An incarcerated defendant may file such a motion 30 days after having petitioned the BOP to move for a sentence reduction on his behalf or after having fully exhausted all administrative remedies to appeal the BOP's failure to do so. Id. The statute's now-familiar standard requires the Court to "ask four questions: (1) has the defendant complied with the administrative exhaustion requirement, (2) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction, (3) are the 18 U.S.C. § 3553(a) sentencing factors consistent with a lesser sentence than that previously imposed, and (4) is there a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, 505 F. Supp. 3d 328 (S.D.N.Y. 2020). Following Brooker, it is undisputed

that district courts are "free[] ... to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." 976 F.3d at 237.[2]

## II. Analysis

The Court finds that Salemo has satisfied all four of the elements of a motion for sentence reduction, which are addressed seriatim.

A. Administrative Exhaustion

To move in the district court for a sentence reduction, a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This exhaustion requirement applies to Salemo, because he brings the motion for compassionate release himself.

The Government argues that Salemo has failed to exhaust his remedies because he raises new claims in the instant "third" motion for compassionate release that he failed to make in his prior motions. ECF 122. In particular, Salemo argues that he contracted COVID-19

---

[2] In exercising its discretion, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 238 (citing 28 U.S.C. § 994(t)). This limitation is inapposite here, because neither Salemo nor the Court relies solely on his rehabilitation.

4

during his incarceration, that he has not received proper medical care, and that he is susceptible to new variants of COVID-19.

The Second Circuit, however, has not addressed whether 18 U.S.C. § 3582(c) requires a defendant not only to have exhausted the available BOP procedures but also to have exhausted those procedures with respect to each issue he raises. There is a split among the judges in this district, and among district courts nationwide, as to whether section 3582(c)(1)(A) requires issue exhaustion. See, e.g., United States v. Torres, 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020) (Stein, J.) ("[T]here is no indication whatsoever in the statutory text [of 18 U.S.C. § 3582(c)] that issue exhaustion is required."); United States v. Gotti, 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) (McMahon, J.) ("It is well-settled that a defendant must show administrative exhaustion with respect to the specific basis for relief upon which he is relying."). The Government represents, however, that the majority of courts to have considered the issue have required issue exhaustion. Gov. Letter 2.[3]

Salemo responds that this is not a "third" motion but a continuance of his second motion, which was remanded by the Second Circuit for renewed consideration. Reply 2. He points out that this Court deemed his motion exhausted when it was initially decided and that there was no indication that the Second Circuit limited

---

[3] But see Torres, 464 F. Supp. 3d at 657 (noting that rejecting an issue-exhaustion requirement is "consistent with the majority of district court decisions that have addressed the question").

5

consideration on remand to "only those circumstances that existed <u>ten months earlier</u>." Id. at 3. Finally, Salemo argues that ignoring the serious changes in circumstances since the initial motion for compassionate release was filed, including the prevalence of COVID-19 in prisons, Salemo contracting COVID-19, and the risks posed by the new COVID-19 variants, is a "meaningless exercise in service of an exhaustion requirement" that this Court has recognized is subject to judicial waiver. Id. at 3–4; <u>see</u> <u>United States v. Haney</u>, 454 F. Supp. 3d 316, 322 (S.D.N.Y. 2020) (Rakoff, J.) ("[T]he Court concludes that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late."); <u>see also</u> ECF 103 at 3 n. 1 (same).

On consideration, the Court accordingly rejects the Government's invitation to inscribe an "issue-exhaustion" requirement on the sentence reduction statute. Any issue-exhaustion requirement would have to be inferred from the text and structure of the sentence modification statute. <u>See</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 107 (2000) ("[R]equirements of administrative issue exhaustion are largely creatures of statute."). But as Judge Stein of this Court recently explained in a thorough and well-reasoned opinion, the statutory scheme contains none of the usual indicia of Congressional intent to require litigants to present each argument to an administrative decisionmaker

6

before obtaining a hearing on the merits before a district court. See Torres, 464 F. Supp. 3d at 655-656.

Starting with the text, section 3582(c)(1)(A) contains no express requirement that each issue in a motion was previously presented to BOP. See id. Instead, it mandates that "the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion on the defendants behalf or" have waited "30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Second Circuit declined to impose an issue-exhaustion requirement for asylum claims on the basis of similar language in the Immigration and Nationality Act. See Lin Zhong v. United States DOJ, 480 F.3d 104, 121–22 (2d Cir. 2006). Nor does any applicable regulations purport to require the BOP to screen each argument before a motion may be filed in district court. See Torres, 464 F. Supp. 3d at 655-656.

While courts have sometimes imposed issue-exhaustion requirements without a textual basis, the sentence reduction statute has none of the features that have motivated courts to erect similar hurdles in the past. Since issue exhaustion has a similar function to appellate preservation rules, the Supreme Court has indicated that "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding ... the rationale for requiring issue exhaustion is at its greatest." Sims, 530 U.S. at 109. In contrast, where "proceedings are inquisitorial rather than adversarial," with the agency's process oriented to "investigate the facts and develop

7

the arguments both for and against granting benefits," then "the reasons for a court to require issue exhaustion are much weaker." Id. at 110-111. As Torres explains, the "lengthy" BOP internal administrative process to screen sentence reduction applications has an inquisitorial, rather than an adversarial, structure.[4] That BOP process is designed to assess the defendant's application for sentence modification using several sources, with the defendant's stated rationale only a jumping-off point. Nor does the district court's assessment of the section 3852(c)(1)(A) motion take the form of a review of the BOP process. Therefore, this Court holds that "a judicially created issue-exhaustion requirement is inappropriate," Sims, 530 U.S. at 111, and a defendant may raise new issues in a motion

---

[4] "After an inmate has made a request for compassionate release with the warden of his facility, the warden must investigate and evaluate the request. 'If the Warden, upon an investigation of the request determines that the request warrants approval, the Warden shall refer the matter in writing with recommendation to the Office of General Counsel.' Then, if the General Counsel agrees that approval is warranted, she must 'solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis of the request,' and 'the opinion of the United States Attorney in the district in which the inmate was sentenced.' Throughout this process, BOP officials are required to investigate and consider the merits of an inmate's compassionate-release request, with little involvement from the inmate himself. And, notably, there is no requirement that a BOP representative be assigned to oppose the inmate's request .... The BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan. Given its expertise in evaluating these factors, it makes sense that the BOP does not depend much, if at all, on claimants to identify issues for review." Torres, 464 F. Supp. 3d at 656-657 (quoting 28 C.F.R. § 571.62).

8

for sentence modification so long as he has applied to BOP and either exhausted his administrative appeals of BOP's denial of that application or or waited for 30 days.

The Court accordingly holds that Salemo has satisfied section 3582's administrative exhaustion requirement, even though his Motion presents issues not raised in the internal BOP process.

B. Extraordinary and Compelling Reasons

Salemo not only argues that his case presents "extraordinary and compelling circumstances" justifying release under the Court's discretion, as Brooker permits. Salemo further contends that he satisfies the no-longer-binding Sentencing Guidelines policy statement under which he was previously ineligible for reduction. See ECF 103. The Court agrees in both respects.

1. Age & Medical Condition

Salemo is 77 years old, suffers from multiple medical conditions including obesity, chronic obstructive pulmonary disorder (COPD), cataracts, and hypertension, and has completed 129 months of his 162 month sentence. ECF 124 at 21 (medical records). Application Note 1(B) to U.S.S.G. § 1B1.13 states that an extraordinary and compelling reason for sentence reduction exists if "the defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Salemo unquestionably meets the first and third criteria given that he is 77 years old and has now served 80% of his

9

sentence.[5] The Government disputes the second criterion, questioning whether Salemo's medical conditions are caused by the aging process or that they constitute "serious deterioration." However, as Salemo notes, at the very least, cataracts are a deteriorating condition caused by aging per the Mayo Clinic's website. Reply 5; Mot. 15 n.6.

Salemo's age and growing list of medical problems are also relevant to the Court's discretionary assessment of whether extraordinary and compelling reasons for sentence reduction exist apart from the persuasive but no-longer-binding factors set forth in Application Note 1(B). The Government contends that while Salemo's age is advanced, the Court took it into account during sentencing. Gov. Letter 4. Furthermore, the Government claims that Salemo's medical records indicate his health issues are relatively well-managed, which cuts further against sentence reduction given that he is now in a halfway house rather than in prison. Id.

Salemo disputes the Government on these points, maintaining that age is an appropriate consideration for sentence reduction in light of Application Note 1(B)'s inclusion of "Age of Defendant" as an extraordinary and compelling circumstance. Reply 6. Salemo also maintains that he has been prevented from accessing necessary medical care. He specifically cites the facts that his surgery to remove a

---

[5] The Court denied Salemo's prior motion for sentence reduction because he had not yet served 75% of his sentence, noting that he was "quite close." Memorandum Order, ECF 103, 4. He has now exceeded this requirement.

cataract on his left eye was canceled due to the pandemic, his dentures need to be replaced (he was without any at the time of argument), he requires an endoscopic examination of his esophagus, and he needs to see a respiratory specialist for his Chronic Obstructive Pulmonary Disease. Mot. 14-15. Salemo's claims that BOP's healthcare system is insufficient for his medical needs as the approval process is "lengthy and difficult" and he has not yet received adequate care. Id. He submits that if he is released from custody, he can use his Medicare coverage to properly deal with his health issues. Id.

The Government acknowledges Salemo's cancelled cataract surgery but points out that in November 2020, three months after the cancelled surgery, he refused the standard pre-operation ophthalmology visit necessary for cataract surgery. Gov. Letter 4. They argue that Salemo's claim that he requires better medical care is "controverted by his refusal to receive such care when offered." Id. However, Salemo's medical records indicate that he refused the ophthalmological treatment due to the mandatory 21-day quarantine that would follow such visits because the quarantine period could interfere with other medical treatment he required. ECF 124 at 116-117 (medical records). The records further indicate that Salemo requested that such visits be postponed until the quarantine requirements were lifted. Id.

After reviewing the medical records and the parties' arguments, the Court concludes that Salemo has at least demonstrated that he is suffering a serious deterioration of physical health as a result of the aging process. Accordingly, his case would qualify as presenting

an extraordinary and compelling reason to reduce his sentence were the Application Note to the Sentencing Guidelines still binding on this Court. And in the exercise of the Court's post-Brooker discretion, it holds that Salemo's medical condition and advancing age weigh heavily in favor of a modification of his sentence.

   2. Rehabilitation and Prison Behavior

Salemo also argues that his behavior in prison warrants a sentence reduction. During his incarceration, Salemo took eleven education courses and programs that comprised over 140 hours and only received one minor disciplinary infraction (for informing a fellow inmate's mother by email that the inmate was being transferred to another prison). Mot. 7-8. The Government argues that a lack of significant disciplinary infraction "does not establish that he has been rehabilitated," and, even if it did, rehabilitation alone is not an extraordinary and compelling reason under 28 U.S.C. § 994(t). Gov. Letter 4. But that objection is, of course, irrelevant, since the Government does not dispute rehabilitation's relevance to the Court's sentence modification analysis and Salemo's Motion does not rely solely on rehabilitation. The Court therefore duly notes Salemo's exemplary record in prison and concludes that it weighs in his favor.

   3. Reentry Plan

Salemo also cites his preparation for re-entry, as he has begun looking for an apartment as well as work, and he will be eligible to receive Social Security and Medicare upon release. Mot. 8-9. The Government responds that an ambiguous search process and the citation

12

of government benefits "is no plan at all." Gov. Letter 4. The Court disagrees. Receipt of government benefits is relevant to assessing Salemo's plans for reentry. Social Security is a secure income source and Medicare a guaranteed medical insurance plan that will help Salemo address his many medical needs that are currently going unmet. Access to a baseline of economic resources and consistent medical care will foster a stable foundation for Salemo's life after prison, and therefore augurs a successful reentry. This is true whether his income and insurance come from an employer or from the state. Accordingly, the Court finds that Salemo's qualification for Social Security and Medicare weigh in his favor.

   4. COVID-19 Pandemic

Salemo argues that the continuing COVID-19 pandemic weighs in his favor for two reasons. First, he argues that his incarceration subject to BOP's infection control measures has resulted in more punishment than the Court envisioned when he was sentenced, before continuous lockdowns and isolation. Salemo is right that courts have repeatedly considered the harsh conditions of confinement during the pandemic in assessing motions for sentence modification. See e.g., United States v. Mcrae, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (Engelmayer, J.) ("[A] day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more

13

punishing."). The Government responds that the harsh conditions of imprisonment during the pandemic alone do not warrant compassionate release. This Court has previously acknowledged that the harsh conditions of incarceration during the pandemic would be insufficient on its own to constitute extraordinary and compelling reasons for sentence reduction. See United States v. Rodriguez, 492 F. Supp. 3d 306, 311 (S.D.N.Y 2020) (Rakoff, J.); Gov. Letter 4. But Salemo does not seek a sentence modification solely because COVID-19 has made his time in prison unusually difficult, and the harsh conditions he has faced are undoubtedly relevant to assessing whether there are extraordinary and compelling reasons to shorten his sentence.

Second, Salemo argues that the continuing public health crisis created by the COVID-19 pandemic is at its most acute inside prisons and other congregant living facilities, including halfway houses. See United States v. Canale, 2020 U.S. Dist. LEXIS 76370, at *4-5 (S.D.N.Y. Apr. 30, 2020) ("Release to a halfway house ... does not meaningfully alleviate [a defendant's] risk."); United States v. White, 2021 WL 240812 (S.D.N.Y. January 25, 2021) ("The Court continues to acknowledge that halfway houses are uniquely positioned to be vectors for the virus."). Accordingly, Salemo argues that the risks of ongoing COVID-19 outbreaks and new variants of the virus elevate the danger to his health the longer he remains in BOP custody. His own case bears this out. When this Court denied Salemo's initial motion for compassionate release, it noted the low rates of COVID-19 infections at FCI Fairton, where he was then incarcerated. See ECF 103 at 6. But since that order,

14

at least 244 of the 881 inmates at that facility contracted COVID-19, with at least one inmate death. Mot. 16–17. Salemo was among those infected at FCI Fairton. Id. While he was fortunately asymptomatic (and has since been fully vaccinated), Salemo claims that he may face long-term effects from the illness and that the new variants of COVID-19 put him at continued risk given his advanced age. Id. at 6; 17. Notwithstanding his good fortune to have been asymptomatic when infected, Salemo argues that he has several risk factors that raise his chance of a severe case of COVID-19 should he be reinfected, including COPD, hypertension, obesity, and his age. Mot. 3.

The Government responds that Salemo's contracting of COVID-19 cuts both ways as "he was asymptomatic and is now at a lower risk of being re-infected." Id. Furthermore, it characterizes Salemo's arguments about the new COVID-19 variants as "generalized and speculative," and that they are mitigated by his current residence in a halfway house. Id. at 3.

Thankfully, the availability of COVID-19 vaccines has offered significant protection to those people responsible enough to protect themselves and their communities by getting vaccinated. But the past few weeks have only underscored the remaining danger that COVID-19 poses, even to those who have recovered from COVID-19 and who have been fully vaccinated.[6] Social distancing and infection control remains

---

[6] See, e.g., J. Shastri, et al., Severe SARS-CoV-2 Breakthrough Reinfection With Delta Variant After Recovery From Breakthrough Infection by Alpha Variant in a Fully Vaccinated Health Worker, Frontiers in Med. (Aug. 20, 2021), https://bit.ly/3BvylgH.

15

important for individuals and public health. The Court accordingly concludes that Salemo's continued residence in a halfway house under BOP custody increases the risk COVID-19 poses to him and to the community at large. These ongoing risks, combined with Salemo's unusually difficult experience being imprisoned during the COVID-19 pandemic, therefore weigh in Salemo's favor.

Salemo's age and medical condition would be enough to establish the existence of extraordinary and compelling reasons justifying modification of his sentence. The case is even stronger considering his record of rehabilitation, his reentry plan, his experience in prison during the COVID-19 pandemic, and the risk that COVID-19 continues to pose to people living in congregant facilities.

C. Section 3553(a) Factors

Under 18 U.S.C. § 3582(c)(1)(A), once a defendant has exhausted administrative remedies and been found to have extraordinary and compelling reasons for a sentence reduction, the Court may modify his term of imprisonment after considering the sentencing factors set forth in 18 U.S.C. § 3553(a).

Salemo maintains that the minor sentence reduction he is requesting will still result in him having spent ten and a half years incarcerated, another two months at a halfway house, and possibly more under supervised release. He insists that this would still adequately "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); Mot. 20-21. Furthermore, as discussed above, such a

16

reduction would "provide the defendant with needed ... medical care," which is relevant under 18 U.S.C. § 3553(a)(2)(D). Salemo points out that when the Court considered the "kinds of sentences available" under 18 U.S.C. § 3553(a)(3) it "could not have envisioned" that he would be incarcerated under the harsh conditions at FCI Fairton during the pandemic nor that he would contract "a serious, life-threatening disease that may yet have long-lasting effects on his health." Mot. 21. Therefore, he contends that his sentence was "much harsher" and "constituted much more punishment" than was originally intended by the Court. Id.

The Government responds that Salemo received a long sentence under the sentencing factors to reflect the "massive fraud" he committed, and that his current residence in a halfway house combined with the relatively few months left in his sentence mitigates many of the circumstances Salemo claims constitute extraordinary and compelling reasons for early release, which "will be non-existent in less than a year." Gov. Letter 4-5.

On balance, Salemo is right. Modification at this point would result in minimal change to his sentence, nowhere near enough to undermine respect for the law. And the fact that his sentence is almost complete does not mean that a marginal reduction is somehow contrary to the sentencing factors.

### III. Conclusion

For the reasons set forth above, the Court grants Salemo's motion for a sentence reduction. At this point, with only nine months left

17

in BOP custody, the only sensible modification of Salemo's sentence is to reduce it to time served. All other aspects of his original sentence remain in full force and effect.

    SO ORDERED.

Dated:   New York, NY
          September 7, 2021                         JED S. RAKOFF, U.S.D.J.